[L. A. No. 19366.   In Bank.   Dec. 17, 1946.]

CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION, Appellant, v. NORINS REALTY COMPANY, INC. (a Corporation) et al., Respondents.

Robert W. Kenny, Attorney General, Clarence A. Linn, Assistant Attorney General, and Doris H. Maier, Deputy Attorney General, for Appellant.

Maurice Gordon for Respondents.

EDMONDS, J.—Substantially the same question as was decided in *California Employment Stabilization Commission* v. *Morris*, 28 Cal.2d 812 [172 P.2d 497], is again presented for determination. In considering the status of certain salesmen and brokers associated with Norins Realty Company, Inc., in the sale of real estate, contrary to the contentions of the commission, the superior court held that these persons were independent contractors and not employees. The commission's appeal is from the judgment entered accordingly.

The action was brought under the Unemployment Insurance Act (Stats. 1935, p. 1226, as amended; 3 Deering's Gen. Laws, Act 8780d) for the collection of contributions and interest alleged to be due from the realty company for the calendar years 1936 and 1937. It appears without question that the corporation engaged the services of 67 persons, all of whom were either salesmen or brokers licensed by the California Real Estate Commission, to sell real property owned by it. This property consisted principally of lots in subdivisions which the company had placed on the market.

The president of the corporation, who had been connected with it since 1925 and, during the taxable period for which contributions are claimed was its secretary and treasurer, stated in detail the circumstances under which the services of the salesmen and brokers were engaged and the manner in which they conducted their operations. No distinction was

made between a broker and a salesman in the functioning of the sales organization. There was no written or oral contract with any member of the sales force except as to the amount of the commission he would receive and the time of its payment. An employment card offered in evidence was identified by this witness as a form which had been used for a short time in 1929 or 1930 and was then discontinued.

The corporation did not bear any part of the expense incurred by the salesmen in their work, compensation being entirely on a commission basis. It did not furnish them with transportation, office facilities, desk space, telephone service, or business cards. However, there were available to either customers or salesmen maps and a pamphlet which contained pictures of the lake and cottages on one of the subdivisions and of a clubhouse proposed to be built. The salesmen were also furnished with a price list.

There were no rules or regulations with regard to the activities of the salesmen, and they were not instructed as to the manner in which the sales were to be made. But, according to the witness, "They were told that we did not expect them to make misrepresentations." They were not required to attend sales meetings but some such meetings, characterized as impromptu "get-togethers" were held. No one was given an exclusive sales right in any particular territory, nor were restrictions imposed as to canvassing a stated territory at a particular time or with certain frequency. On the contrary, the company made no demand upon a salesman to devote a stated time to the business or that he produce a minimum volume of sales, and there were no fixed hours of employment.

No direction was given the salesmen to make a stated number of calls on a prospect, nor were they asked to interview any particular person. They were not required to keep a record of the business transacted or to report the nature of their activities. They were not expected to, nor did they, collect accounts, investigate complaints or credit ratings, or make adjustments. There was no rule restricting the salesmen's activities to the property of the corporation or prohibiting them from being employed elsewhere, and the corporation's officers knew that some of them were engaged in other work while they were offering the corporation's property for sale. No drawing accounts were given nor any advances made.

However, personal loans and a few company loans were made to some of them.

The witness relied upon by the state to establish the corporation's liability was Mrs. Leila Nathanson, a member of the corporation's staff in 1938. She testified that her work consisted of obtaining prospects for the purchase of the corporation's property, but that she turned over the names of such persons to other salesmen or brokers. She did not close any deals. The only thing she remembered about a contract between her and the corporation was that it concerned "just our commission." When shown the employment card which has been referred to, she stated that it was about the same as the one she signed. However, no such card bearing her signature was produced and she explained that "it has been quite a long while since I worked there. I have forgotten all this." The testimony of the corporation's president is that she signed no written contract.

Mrs. Nathanson told the court that she used the telephone very little. She did not remember whether she paid for business cards of the Norins company upon which she wrote her name. No automobile was furnished for her use, nor was any allowance made to her for gasoline. The Norins company did not pay for the insurance on her automobile nor for her real estate license. No names of prospective customers were supplied to her. Other testimony given by her was in substantial accordance with that of the company's president. Upon this evidence the trial court found that the salesmen and brokers were independent contractors.

The contentions of the parties in the attack upon and defense of the judgment in favor of the corporation are essentially the same as those made in the Morris case, and the principles there stated and applied are controlling here. There is substantial evidence to support the finding of the trial court that the salesmen and brokers were independent contractors. This evidence shows that the corporation had no right to control, nor did it, in practice, control the manner or means by which the lots were sold. No written or oral contracts were made with the salesmen or brokers except as to the amount of their commissions. They were not subject to any mandatory rules, regulations, or instructions. They had no fixed hours of work, nor were they required to devote any particular time to the business. No minimum volume of business was required. Some of the salesmen were engaged in other activities while working for the corporation. In regard to the factors

of supplying instrumentalities and a place to perform the services, although maps and pamphlets were available, the salesmen were not furnished offices, desk space, telephone facilities, transportation, or business cards, and the method of payment was by the job. These working conditions entirely negative the relationship of employer and employee.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied January 14, 1947.