[Civ. No. 9159. Third Dist. May 19, 1958.]

A. ARTHUR MESCHINI, Appellant v. GUY F. ATKINSON
COMPANY (a Corporation) et al., Respondents.

C. Ray Robinson, Donald E. Oren and Angell & Adams for Appellant.

Stammer, McKnight & Barnum for Respondents.

PEEK, J.—This is an action to recover damages for personal injuries sustained as the result of a collision between an automobile driven by plaintiff and a Euclid tractor and scraper combination operated by the defendant Furrer and owned by the defendant Guy F. Atkinson Company, referred to herein as Atkinson. Plaintiff appeals from the judgment entered pursuant to the verdict of the jury.

The second amended complaint set forth three causes of action against the defendants: The first alleged a dangerous condition and negligent operation of the Euclid; the second was predicated upon the alleged dangerous and negligent operation of the convoy; and the third alleged the operation of a convoy of vehicles in excess of the maximum width and weight as permitted by the applicable sections of the Vehicle Code, all of which directly and proximately caused the collision and plaintiff's injuries.

The defendants' answer admitted the collision and the operation of the convoy but denied generally the allegations of the complaint relating to negligence and proximate cause, and as affirmative defenses pleaded contributory negligence and assumption of risk.

As a result of the collision plaintiff suffered serious injury and was unable to testify. His wife, who was an occupant of the car at the time of the accident, suffered a loss of memory of the accident and of the events immediately preceding it and likewise was unable to testify in any particular regarding the accident. There were no disinterested eyewitnesses; hence the record consists primarily of photographic evidence and the testimony of Atkinson's employees.

The collision occurred on a clear day on the bridge spanning Berenda Slough on United States Highway 99, immediately southeast of Chowchilla in Madera County. The bridge which was approximately 24 feet wide and 500 feet long was surfaced with asphalt. In the absence of an obstruction, such as other vehicles, it could be seen from the south for a distance of from one-quarter to one-half mile. A white line separating the north and south lanes of traffic was not in the exact center of the roadway. At the south end of the bridge the northbound lane was 12 feet 3⅞ inches wide, and the southbound

lane was 11 feet 8⅝ inches wide. One hundred feet farther north the northbound lane was 12 feet 2⅝ inches wide and the southbound lane was 11 feet 11 inches wide. Along each side were narrow concrete curbs and then wooden bridge railings. At both ends of the bridge the highway was 24 feet wide and, in addition, had a 4-foot shoulder on either side.

Defendants' convoy was traveling south and included first a Ford pickup truck driven by defendant Keller, Atkinson's foreman; then five DW-20 Caterpillar tractor and scraper combinations; then one Euclid tractor and scraper; and finally two Ford flatbed trucks. The Caterpillar tractors and scrapers were each 11 feet 7 inches wide and the overall length of each was approximately 44 feet. Only the Euclid appears to have been directly involved in the collision. It was an earth-moving machine consisting of a large tractor trailing a bucket type scraper or dirt remover. It was 11 feet 6 inches wide, somewhat over 40 feet long, and it weighed approximately 25 tons when empty.

On the left side of the front bumper of the pilot car was a 3 feet by 4 feet sign reading "Caution Wide Load Following" which had been issued by the Department of Motor Vehicles. An 18 inches by 20 inches red flag extended out diagonally from the left front corner of the sign. As the convoy proceeded across the bridge, the defendant Keller held a similar red flag out of the lefthand window of the Ford pickup he was driving and waved it up and down until he was some distance past the bridge. Each unit of the convoy following the pilot car was equipped with two red flags extending diagonally from each end of the front bumper. The maximum speed of the Caterpillars and the Euclid was governed at 30 miles an hour. Estimates of the speed of the convoy as it traveled across the bridge varied from 15 to 25 miles per hour.

The plaintiff who was driving north had been passing the convoy for approximately a quarter of a mile and was immediately to the rear of a Ford automobile. His speed was estimated at from 40 to 70 miles an hour. The Pontiac car which he was driving was 6 feet 4⅝ inches wide at the widest point and 16 feet 10¾ inches long. The last of the five DW-20 tractors was just leaving the bridge as plaintiff's northbound automobile entered onto the south end. According to the defendant Furrer, to his knowledge he did not drive the Euclid over the center line on the bridge, nor did he see the Caterpillar driven by Harris, which was directly ahead of him, cross

the line. The defendants Dodson, who was driving the truck immediately to the rear of the Euclid, and Harris testified they did not see the Euclid cross the white line. Harris, however, testified that he could have driven his Caterpillar a foot or so over the line at some point on the bridge.

Furrer also testified that prior to driving onto the bridge he raised the bowl of the scraper, allowing it to clear the concrete curb, and turned on his headlamps. He estimated the southbound lane to be 13 to 14 feet wide, and the distance between his Euclid and the DW-20 immediately in front of him as approximately 200 to 250 feet. When he was nearly halfway across the bridge he saw an oncoming Ford car 100 to 125 feet south of the south edge of the bridge. He did not see plaintiff's car until it was some 250 to 300 feet north of the south end of the bridge and approximately 75 feet from his vehicle and traveling at 60 to 70 miles per hour. The Ford passed him at the same rate of speed with a clearance of 3 feet. "All of a sudden, it [the Pontiac] seemed to just leap out from the bridge and come across into my lane of traffic and bump into me . . . the Pontiac hit me approximately dead center, with the Pontiac car, of [sic] my left front wheel."

According to Furrer, immediately after the collision which occurred in the southbound lane, he lost control of the steering mechanism of the tractor and more or less careened into the northbound lane of traffic, going up and coming to rest on the top of the Pontiac.

Additional evidence was introduced to the effect that the Pontiac appeared to strike the easterly guard rail and then to careen or bounce into the southbound lane. There was further testimony, although conflicting, concerning the exact point where the impact occurred and also in regard to debris on the bridge and the skid marks made by plaintiff's car. Further conflicting testimony also appears regarding the place where plaintiff's wife was thrown on the highway. The testimony concerning the speed and stopping distance of the vehicles in the convoy was also in conflict. The defendant Keller estimated that the speed of the convoy in crossing the bridge was 15 to 20 miles an hour and that the Caterpillars and the Euclid, when operated at a speed of 15 miles per hour, could be stopped in 50 to 60 feet; at 20 miles an hour, 60 feet; and at 25 miles an hour, 60 to 70 feet. The defendant Furrer fixed the speed of the Euclid when crossing the bridge at 20 to 25 miles per hour and estimated that the equipment, when operated at 25 miles per hour would permit a stop within

80 to 90 feet; at 20 miles per hour, in 55 to 65 feet; and at 15 miles per hour, in 30 to 40 feet.

The Vehicle Code, section 694, sets forth regulations governing size, weight and load. In paragraph (e) thereof it is provided that ". . . special mobile equipment and highway construction or maintenance equipment shall not exceed a width of 120 inches." By the terms of section 710 of that code, the Department of Public Works may, in its discretion, issue special permits authorizing the operation of vehicles or special mobile equipment exceeding the maximum specified. Under the provisions of section 670.05, subdivision (e), equipment operated under special permit as authorized in the code ". . . shall not be operated at a speed in excess of that permitting a stop in 32 feet."

Defendants introduced into evidence a permit issued to the Guy F. Atkinson Company to ". . . drive five (5) DW 20 Caterpillar units towing carryalls 11'6" wide and one Euclid tractor towing carryall 11'6" wide . . ." The permit was issued subject to compliance with all applicable laws and to printed general provisions on the reverse side thereof, among which were the following:

"2. *Yield Right of Way.* When being passed by vehicles traveling in either direction, no portion of the equipment or trailers shall extend beyond the center line of pavement or traveled way.

"3. *Protection on Bridges or Narrow Roads.* When crossing bridges or on roads so narrow that it is impossible to comply with paragraph 2 one man shall be posted behind and one man ahead of such equipment to warn and direct approaching traffic."

Plaintiff's primary contentions relate to certain instructions proposed by him in accordance with his theory of the case which the court refused to give, and to certain instructions which were given at the request of the defendants as regards the permit and the question of contributory negligence.

The rule is well established that " 'it is the duty of the court to instruct on every theory of the case finding support in the evidence.' " (*Leming* v. *Oilfields Trucking Co.,* 44 Cal.2d 343, 352 [282 P.2d 23, 51 A.L.R.2d 107].) The pleadings and the facts in the present case, when viewed in light of the quoted rule, warranted proper instructions on plaintiff's theory of recovery which was not limited to a single negligent act, but was based upon asserted multiple

acts of negligence—the negligence of the driver, Harris, in crowding the plaintiff; the negligence of Furrer, the driver of the Euclid; and the negligence of the foreman, Keller, in failing to maintain adequate warning to approaching vehicles of the narrow bridge and the overwidth convoy.

There can be no question but that the statute and the permit formulated a standard of conduct which the court should have adopted in submitting to the jury the question of defendants' liability. (*Hopper* v. *Bulaich*, 27 Cal.2d 431 [164 P.2d 483].) The jury had before it the terms, conditions and restrictions of the permit and was entitled, under proper instructions, to consider whether the evidence showed a violation of the permit and the applicable statutes, and if so, whether such violation was the proximate cause of plaintiff's injuries. The court, however, after receiving the permit in evidence, refused to adopt the regulatory standard therein set forth for guidance of the jury, but gave the following instruction:

"The Plaintiff in his Complaint alleges that certain of the equipment being driven and operated by the Defendants was of widths and weights in excess of that permitted by law to be operated on a public highway. However, the Defendants claim that it was not unlawful or negligent to drive or operate said equipment upon said highway because they had obtained from the State Department of Public Works a written permit to do so. In this connection, you are instructed that Section 710 of the Vehicle Code of California provides that the State Department of Public Works, with respect to highways under its jurisdiction, may, at its discretion, upon application in writing, and if good cause appears, issue a special permit in writing authorizing the applicant to operate or move a vehicle or combination of vehicles or special mobile equipment of size or weight of vehicle or load exceeding the maximum specified in said Code upon any highway under its jurisdiction for the maintenance of which it is responsible."

While it is true, as defendants contend in support of the instruction as given, that it sets forth the conflicting theories of the parties, we cannot agree with the additional argument that it goes no further. One cannot escape the conclusion that the instruction at least indicated to the jury that the defendants, having obtained a permit, it was then lawful for them to operate any overweight, or overwidth vehicle on the highway, and wholly omitted the provisions of the permit. A second instruction much to the same effect was also given.

Plaintiff's next contention relates to the instructions on contributory negligence, of which there were many. It would seem unnecessary to discuss each in detail. Suffice it to say that the basic error appearing in the instructions so attacked stems from the failure of the court to include all necessary elements and in particular, to directly instruct the jury upon the burden of proof. A formula instruction, the court said in *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 170 [153 P.2d 338], ". . . may be justified only if it contains all of the elements essential to a recovery [citing cases], and the absence of any one of the necessary elements may not be compensated for or cured by the fact that other instructions state the omitted factors required to sustain the verdict directed. . . ."

■ The trial court gave an instruction, appearing below, almost identical to one condemned by this court in *Colbert* v. *Borland*, 147 Cal.App.2d 704, 712-713 [306 P.2d 53]:

"You are instructed that the burden is upon the Plaintiff to prove the affirmative of his case by a preponderance of the evidence.

"Therefore, you are instructed that you may not speculate as to whether any negligence on the part of any Defendant was a proximate cause of the collision or of the Plaintiff's damages, and if the evidence leaves these things a matter of conjecture or doubt, then the Plaintiff has not sustained the burden of proof required of him under the law.

"In other words, if after considering all of the evidence, you find that the accident may have been caused in several different ways, and you further cannot determine what was the proximate cause of the accident, or that any act or failure to act on the part of any Defendant was a proximate cause of the accident, then your verdict must be for the Defendants."

In the Colbert case we held: "The error in this instruction is so obvious as to require little comment. Concerning a similar instruction, the court said in *Greenleaf* v. *Pacific Tel. & Tel. Co.*, 43 Cal.App. 691 [185 P. 872]: '. . . To what avail are the instructions as to the sufficiency of a preponderance of the evidence to support a verdict, and as to its efficacy if it produces unprejudiced conviction in their minds, when followed by the explicit direction that the degree of certainty indicated must not only be beyond a reasonable doubt, but must not admit of any doubt at all? Even in a criminal case, requiring the minds of the jurors to be satisfied beyond a

reasonable doubt, this instruction would be erroneous. That it must be considered prejudicial, under the state of the evidence here, there can be no question.' ''

Plaintiff further contends the court erred in refusing his instruction concerning the negligence of Harris, the driver of the DW-20 tractor, in crowding plaintiff off the highway and thereby setting in motion the facts which caused the ensuing collision. Defendants' answer is that a general instruction in this regard was given, and hence the refusal of the court to give the particular instruction proposed by plaintiff was not error. ''. . . [T]he giving of a general instruction which covers the subject in an abstract way does not justify the refusal of a requested particular instruction correctly applying the law to a specific matter.'' (*Barnett* v. *Garrison*, 93 Cal.App.2d 553, 558 [209 P.2d 426].) Although the evidence as summarized warranted a proper instruction on this phase of plaintiff's theory, plaintiff's proposed instruction lacked the essential element of proximate cause; i.e., if the negligence of Harris was the proximate cause of plaintiff's injuries.

By reason of the necessity of a reversal, it becomes unnecessary to discuss the remaining contentions of plaintiff. This includes his contention that the permit constituted new matter which must be affirmatively pleaded. Even assuming the correctness of his argument, should a new trial ensue such error, if any, may easily be corrected by amendment.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied June 11, 1958, and respondents' petition for a hearing by the Supreme Court was denied July 16, 1958.