Filed 11/18/22; Certified for Publication 12/19/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES R. WHITLACH,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>PREMIER VALLEY, INC. et al.,<br><br>Defendants and Respondents. | F082322<br><br>(Super. Ct. No. CV-19-005627)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County. John D. Freeland, Judge.

Clapp & Lauinger, James F. Clapp and Marita Lauinger; Wynne Law Firm and Edward J. Wynne; Altshuler Berzon and Michael Rubin, for Plaintiff and Appellant.

Arena Hoffman, Ronald D. Arena, Conor D. Mack and Michael Moore, for Defendant and Respondent Premier Valley, Inc.

O'Melveny & Myers, Apalla U. Chopra, Adam J. Karr, Andrew Lichtenstein, Jason Zarrow and Anton Metlitsky, for Defendant and Respondent Century 21 Real Estate LLC.

June Babiracki Barlow, Neil Kalin and Jenny Li for California Association of Realtors as Amicus Curiae on behalf of Defendant and Respondent.

-ooOoo-

Plaintiff James Whitlach pursued a claim under the Labor Code Private Attorney General Act of 2004 (Lab. Code, § 2698 et seq.) against Defendants Premier Valley, Inc. (doing business as Century 21 MM) and Century 21 Real Estate LLC, to enforce civil penalties for violations of the Labor Code. The trial court sustained defendants' demurrer to the operative complaint without leave to amend. Whitlach appealed.

This appeal involves issues of statutory interpretation with regard to the following question: What is the applicable test or governing standard for determining whether a real estate salesperson is an "employee" or an "independent contractor" for purposes of the Labor Code's wage and hour provisions. Resolution of this question turns on interpreting recently enacted Labor Code section 2778, subdivision (c)(1), and other provisions incorporated therein.

We conclude the applicable test for the purpose at hand is the test set forth in Unemployment Insurance Code sections 650 and 13004.1, as incorporated in Business and Professions Code section 10032, subdivision (b), which is itself incorporated in Labor Code section 2778, subdivision (c)(1).

The trial court reached the same conclusion and applied the correct test in ruling on defendants' demurrer. We affirm the judgment.

## PROCEDURAL BACKGROUND

### I. Complaint

Plaintiff James Whitlach is a former real estate agent who was affiliated with defendant Premier Valley, Inc., doing business as Century 21 MM (Premier Valley), a real estate brokerage firm located in Oakdale. Premier Valley is a franchisee of co-defendant Century 21 Real Estate LLC (Century 21), a Delaware Corporation with its principal place of business in Parsippany, New Jersey.

On December 20, 2018, Whitlach filed a class action complaint in this matter, alleging multiple violations of the Labor Code, among other claims. The complaint

2.

alleged he was bringing the class action "on behalf of similarly situated [real estate agents] who were misclassified as independent contractors [when they should have been considered employees,] and as a result were not properly paid all wages due and owing, [were] subject[ed] [to] unlawful deductions, and were not reimbursed for reasonable and necessary business expenses."

On February 15, 2019, Whitlach filed a first amended complaint (FAC). The FAC added a representative claim under the Labor Code Private Attorney General Act of 2004 (PAGA), which allows an " 'aggrieved employee' " to recover civil penalties for Labor Code violations committed by an employer. (Lab. Code, §§ 2698, 2699, subd. (a).) The FAC alleged Whitlach was an "aggrieved employee" for purposes of his PAGA claim. The FAC further alleged that Whitlach's PAGA claim was brought "on behalf of himself and other current and former [real estate agents]" affiliated with Premier Valley, to seek civil penalties for Labor Code violations committed by Premier Valley and Century 21. On June 5, 2019, Whitlach's class claims were dismissed upon the trial court's adoption of a stipulated order to this effect, leaving at issue only the PAGA claim.

On November 15, 2019, Premier Valley and Century 21 demurred to the FAC on the ground that Whitlach was precluded from asserting a PAGA claim (or any derivative Labor Code claim) because he was an independent contractor, not an employee. The trial court heard the demurrer on June 12, 2020. The court concluded the applicable test for determining Whitlach's employee or independent contractor status for purposes of his PAGA cause of action and derivative Labor Code claims was the Unemployment Insurance Code section 650 test incorporated in Business and Professions Code section 10032, subdivision (b) (Bus. & Prof. Code, § 10032(b)), itself incorporated in Labor Code section 2778, subdivision (c)(1) (Lab. Code, § 2778(c)(1)) (formerly Lab. Code, § 2750.3, subd. (d)(1).) Applying the Unemployment Insurance Code section 650 test,

3.

the trial court ruled that Whitlach was an independent contractor as a matter of law and dismissed the FAC *with leave to amend*.

On June 30, 2020, Whitlach filed a second amended complaint (SAC), which is the operative complaint in this case. The SAC again asserted a single PAGA cause of action, premised on alleged misclassification of real estate agents as independent contractors rather than employees, and attendant Labor Code violations, by Premier Valley. In addition, the SAC contained multiple new allegations directed to the trial court's rationale for dismissing the FAC (i.e., that Whitlach was an independent contractor as a matter of law).

The test applied by the trial court in determining that Whitlach was an independent contractor as a matter of law turned, in part, on the existence of a written contract or independent contractor agreement between Whitlach and Premier Valley. In the SAC, Whitlach alleged the independent contractor agreement he had signed was unconscionable and, therefore, unenforceable. Whitlach alleged, alternatively, that should he be determined to be an independent contractor and not an employee under Business and Professions Code section 10032(b), as incorporated in Labor Code section 2778(c)(1) (the statutes the trial court had relied on in dismissing the FAC), then Labor Code section 2778(c)(1) violated equal protection and was unconstitutional under the California Constitution. Finally, Whitlach alleged he was an employee for purposes of PAGA and his derivative Labor Code claims because he had entered into a separate contract or management employment agreement with Premier Valley, in his capacity as a sales manager for the firm.

On August 6, 2020, defendants Premier Valley and Century 21 demurred to the SAC. Premier Valley and Century 21 again argued that Whitlach was an independent contractor as a matter of law; they further argued that Labor Code section 2778(c)(1) was not unconstitutional, the independent contractor agreement between Whitlach and

Premier Valley was not unconscionable, and the separate contract Whitlach had with Premier Valley for his work as a sales manager was irrelevant for purposes of his representative claims. The trial court heard the demurrer on November 10, 2020; the court sustained defendants' demurrer and dismissed the SAC *without leave to amend*.

Whitlach appeals the trial court's ruling sustaining the demurrer to the SAC and the subsequent judgment of dismissal. He contends the trial court applied the wrong test for determining whether he was an independent contractor or employee of Premier Valley for purposes of his PAGA cause of action and derivative Labor Code claims. In the alternative, he argues Labor Code section 2778(c)(1) is unconstitutional, his independent contractor agreement with Premier Valley is unconscionable and unenforceable, and there is a question of fact as to whether the management employment contract for his sales manager position constitutes the operative agreement for purposes of evaluating his status as an employee or independent contractor with regard to his representative claims. We affirm.

## DISCUSSION

### I. Standard of Review

An order sustaining a demurrer is reviewed de novo to determine whether the complaint states a cause of action. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501; *People for Ethical Operation of Prosecutors etc. v. Spitzer* (2020) 53 Cal.App.5th 391, 398 [we review "a sustained demurrer" and any embedded legal questions de novo].)

### II. Under Labor Code Section 2778(c)(1), and Business and Professions Code Section 10032(b) as Incorporated Therein, Whitlach is an Independent Contractor as a Matter of Law

The parties agree that in order for Whitlach to proceed on his PAGA claim, he was required to be an employee of Premier Valley, because PAGA, as well as the Labor Code statutes Whitlach seeks to enforce through PAGA, apply only to employees, and not to

5.

independent contractors. (See Lab. Code, § 2699, subd. (a) [PAGA action must be brought by "an aggrieved employee on behalf of himself or herself and other current or former employees"]; *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903, 913 (*Dynamex*) [California's labor laws protect only employees, not independent contractors].) The principal question on appeal is therefore whether Whitlach was an employee or independent contractor for purposes of his PAGA cause of action and/*or* derivative Labor Code claims.

The parties further agree that the starting point for this analysis is Labor Code section 2778(c)(1), formerly Labor Code section 2750.3, subdivision (d)(1), which was enacted in 2019 by Assembly Bill No. 5 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 296, § 2) (AB 5), and became effective on January 1, 2020, prior to the trial court's dismissal of both Whitlach's FAC and operative SAC.[1] Before we turn to the implications of Labor Code section 2778(c)(1), we will address the background against which this provision was enacted in some detail.

### A. *Prior Tests for Determining Employee or Independent Contractor Status*

Prior to the enactment of Labor Code section 2778(c)(1), the California Supreme Court decided, in 2018, the watershed *Dynamex* case. (*Dynamex*, *supra*, 4 Cal.5th 903.) *Dynamex* characterized the issue before that court as follows: "The issue in this case relates to the resolution of the employee or independent contractor question in one specific context. Here we must decide what standard applies, under California law, in determining whether workers should be classified as employees or as independent contractors for purposes of California wage orders, which impose obligations relating to

---

[1]    As indicated, Labor Code section 2778(c)(1) was originally numbered as Labor Code section 2750.3, subdivision (d)(1). Effective September 4, 2020, Labor Code section 2750.3 was repealed and renumbered as Labor Code sections 2775-2787. (Stats. 2020, ch. 38, § 1.) We refer to the current code sections as the parties have not noted any substantive change to the code sections relevant to this appeal.

the minimum wages, maximum hours, and a limited number of very basic working conditions (such as minimally required meal and rest breaks) of California employees."[2] (*Dynamex*, *supra*, at pp. 913-914.)

*Dynamex* provided "a historical review of the treatment of the employee or independent contractor distinction under California law." (*Dynamex*, *supra*, 4 Cal.5th at p. 927.) *Dynamex* noted: " 'Few problems in the law have given greater variety of application and conflict in results than the cases arising in the borderland between what is clearly an employer-employee relationship and what is clearly one of independent entrepreneurial dealing. This is true within the limited field of determining vicarious liability in tort. It becomes more so when the field is expanded to include all of the possible applications of the distinction.' " (*Ibid.*)

*Dynamex* explained: "As the above quotation suggests, at common law the problem of determining whether a worker should be classified as an employee or an independent contractor initially arose in the tort context—in deciding whether the hirer of the worker should be held vicariously liable for an injury that resulted from the worker's actions. In the vicarious liability context, the hirer's right to supervise and control the details of the worker's actions was reasonably viewed as crucial, because ' "[t]he extent to which the employer had a right to control [the details of the service] activities was … highly relevant to the question whether the employer ought to be legally liable for them…." ' [Citation.] For this reason, the question whether the hirer controlled the details of the worker's activities became the primary common law standard for determining whether a worker was considered to be an employee or an independent contractor." (*Dynamex*, *supra*, 4 Cal.5th at p. 927.)

---

[2] The court explained that "[i]n California, wage orders are constitutionally authorized, quasi-legislative regulations that have the force of law." (*Dynamex*, *supra*, 4 Cal.5th at pp. 913-914.)

"Prior to [the California Supreme Court's] 1989 decision in [*S. G.*] *Borello*[ & *Sons, Inc. v. Department of Industrial Relations* (1989)] 48 Cal.3d 341, California decisions generally invoked this common law 'control of details' standard beyond the tort context, even when deciding whether workers should be considered employees or independent contractors for purposes of the variety of 20th century social welfare legislation that had been enacted for the protection of employees. Thus, for example, in *Tieberg v. Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 946 …, in determining whether a worker was an employee or independent contractor for purposes of California's unemployment insurance legislation, the court stated that '[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired.' " (*Dynamex*, *supra*, 4 Cal.5th at pp. 927-928.)

"In addition to relying upon the control of details test, however, the pre-*Borello* decisions listed a number of 'secondary' factors that could properly be considered in determining whether a worker was an employee or an independent contractor. The decisions declared that a hirer's right to discharge a worker ' "at will, without cause" ' constitutes ' "[s]trong evidence in support of an employment relationship." ' " (*Dynamex*, *supra*, 4 Cal.5th at p. 928.) "The decisions also pointed to the following additional factors … '(a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or

8.

not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.' " (*Ibid*.)

"In 1989, in *Borello*, *supra*, 48 Cal.3d 341, [our Supreme Court] addressed the employee or independent contractor question in an opinion that has come to be viewed as the seminal California decision on this subject." (*Dynamex*, *supra*, 4 Cal.5th at p. 929.) "The particular controversy in *Borello*, *supra*, 48 Cal.3d 341, concerned whether farmworkers hired by a grower to harvest cucumbers under a written 'sharefarmer' agreement were independent contractors or employees for purposes of the California workers' compensation statutes." (*Dynamex*, *supra*, at p. 929.) The *Borello* court recognized that " '[t]he distinction between independent contractors and employees arose at common law to limit one's vicarious liability for the misconduct of a person rendering service to him' [citation], and that it was in this context that 'the "control of details" test became the principal measure of the servant's status for common law purposes' (*ibid*.). [Citation.] The court then took note of the prior California decisions discussed above, which generally [also] utilized the common law control-of-details standard in determining whether workers were employees or independent contractors for purposes of social welfare legislation, but which [further] identified the numerous additional 'secondary' factors [see above] that may be relevant to that determination. [Citation.] The [*Borello*] court observed that 'the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.' ' " (*Dynamex*, *supra*, at pp. 929-930.)

Finally, *Borello* explained that " 'the concept of "employment" embodied in the [Workers' Compensation Act] *is not inherently limited by common law principles*.' " (*Dynamex*, *supra*, 4 Cal.5th at p. 930.) Rather, the court observed that " '[t]he common law and statutory purposes of the distinction between "employees" and "independent contractors" are substantially different,' " whereby " '*[t]he nature of the work, and the*

9.

*overall arrangement between the parties, must be examined to determine whether they come within the "history and fundamental purposes" of the statute.' "* (*Ibid*.) *Borello* concluded that " '[e]ach service arrangement must be evaluated on its facts, and the dispositive circumstances may vary from case to case.' " (*Id*. at pp. 931, 934 ["although we have sometimes characterized *Borello* as embodying the common law test or standard for distinguishing employees and independent contractors [citation], it appears more precise to describe *Borello* as calling for resolution of the employee or independent contractor question by focusing on the intended scope and purposes of the particular statutory provision or provisions at issue"].) In sum, "*Borello* calls for application of a *statutory purpose* standard that considers the control of details and other potentially relevant factors identified in prior California … cases in order to determine which classification (employee or independent contractor) best effectuates the underlying legislative intent and objective of the statutory scheme at issue." (*Id.* at p. 934.)

After providing a historical overview of various tests for distinguishing between employees and independent contractors, *Dynamex* turned to resolving the question of what test or standard applies "in determining whether workers should be classified as employees or as independent contractors *for purposes of California wage orders*." (*Dynamex*, *supra*, 4 Cal.5th at p. 913.) *Dynamex* adopted "the so-called 'ABC' test" for this purpose. (*Id*. at p. 955.) "The ABC test presumptively considers all workers to be employees, and permits workers to be classified as independent contractors only if the hiring business demonstrates that the worker in question satisfies *each* of three conditions: (a) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (b) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (c) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as that

10.

involved in the work performed." (*Id*. at pp. 955-956, 957.) Under the ABC test, "[t]he hiring entity's failure to prove any one of these three prerequisites will be sufficient in itself to establish that the worker is an included employee, rather than an excluded independent contractor, for purposes of the wage order." (*Id*. at p. 964.)

### B.    *Recently Enacted Labor Code Section 2778(c)(1)*

In 2019, the Legislature passed AB 5 (Stats. 2019, ch. 296, § 2), which enacted, effective January 1, 2020, Labor Code section 2750.3, subsequently renumbered as Labor Code sections 2775-2787, effective September 4, 2020 (Stats. 2020, ch. 38, § 1). Assembly Bill No. 5 codified *Dynamex*'s ABC test as the controlling test for determining a worker's employment status for purposes of the Labor Code, the Unemployment Insurance Code, and the wage orders of the Industrial Welfare Commission (IWC). (See Lab. Code, § 2775, subd. (b)(1).)[3]

However, AB 5, further provided that multiple occupational classifications were exempted from the sweep of Labor Code section 2775, subdivision (b)(1). For the exempted occupational classifications, the ABC test—as set forth in *Dynamex* and subsequently incorporated in Labor Code section 2775, subdivision (b)(1)—was *not* the controlling test for resolving the employee or independent contractor question for purposes of the Labor Code, Unemployment Insurance Code, and wage orders. "Real

---

**3**    Labor Code section 2775, subdivision (b)(1) provides:  "For purposes of this code and the Unemployment Insurance Code, and for the purposes of wage orders of the Industrial Welfare Commission, a person providing labor or services for remuneration shall be considered an employee rather than an independent contractor unless the hiring entity demonstrates that all of the following conditions are satisfied:  [¶] (A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.  [¶] (B) The person performs work that is outside the usual course of the hiring entity's business.  [¶] (C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed."

estate licensee" was one of the occupational classifications that was specifically exempted from the purview of Labor Code section 2775, subdivision (b)(1), and in turn from the application of *Dynamex* and the ABC test for purposes of the Labor Code, Unemployment Insurance Code, and wage orders. (See Lab. Code, § 2778, subd. (c) & (c)(1) (formerly Lab. Code, § 2778, subd. (b) & (b)(1), see Stats. 2021, ch. 422, § 1, correcting numbering error within Lab. Code, § 2778).)

Labor Code section 2778, subdivision (c) and (c)(1), which collectively *remove* real estate licensees from the purview of Labor Code section 2775, subdivision (b)(1) and application of *Dynamex*'s ABC test, provide as follows: "(c) Section 2775 and the holding in *Dynamex* do not apply to the following, which are subject to the Business and Professions Code: [¶] (1) A real estate licensee licensed by the State of California pursuant to Division 4 (commencing with Section 10000) of the Business and Professions Code, *for whom the determination of employee or independent contractor status shall be governed by subdivision (b) of Section 10032 of the Business and Professions Code*. If that section is not applicable, then this determination shall be governed as follows: [¶] (A) For purposes of unemployment insurance by Section 650 of the Unemployment Insurance Code. [¶] (B) For purposes of workers' compensation by Section 3200 et seq. [of the Labor Code]. [¶] (C) For all other purposes in the Labor Code by *Borello*. The statutorily imposed duties of a responsible broker under Section 10015.1 of the Business and Professions Code are not factors to be considered under the *Borello* test." (Italics added.)

### C. Business and Professions Code Section 10032 (Enacted Post-Borello, in 1991)

Business and Professions Code section 10032 provides as follows:

"(a) All obligations created under [the Real Estate Law,] Section 10000, and following, all regulations issued by the [Real Estate] commissioner relating to real estate salespersons, and all other obligations of brokers and

real estate salespersons to members of the public shall apply regardless of whether the real estate salesperson and the broker to whom he or she is licensed have characterized their relationship as one of 'independent contractor' or of 'employer and employee.'

"(b) A real estate broker and a real estate salesperson licensed under that broker may contract between themselves as independent contractors or as employer and employee, for purposes of their legal relationship with and obligations to each other. Characterization of a relationship as either 'employer and employee' or 'independent contractor' *for statutory purposes*, *including*, *but not limited to*, withholding taxes on wages and for purposes of unemployment compensation, shall be governed by Section 650 and Sections 13000 to 13054, inclusive, of the Unemployment Insurance Code. For purposes of workers compensation the characterization of the relationship shall be governed by Section 3200, and following, of the Labor Code." (Italics added.)

Section 10032, subdivisions (a) and (b), were added to the Business and Professions Code in 1991, by Senate Bill No. 630 (1991-1992 Reg. Sess.) (SB 630). (See Stats. 1991, ch. 679, § 1.) Defendants Premier Valley and Century 21 contend the Legislature added Business and Professions Code section 10032 in 1991, to, inter alia, identify the proper test for determination of employee or independent contractor status for real estate agents/salespersons, for purposes of the Labor Code, among other statutory schemes. They contend the Legislature acted to do so after several cases from the Court of Appeal, in resolving this question for a variety of purposes (including labor disputes), either applied the common law/*Borello* test to find that real estate agents were employees or determined that real estate agents were employees as a matter of law (in light of their designation as such in the Real Estate Law). Premier Valley and Century 21 contend, furthermore, that the passage of AB 5 and enactment of Labor Code section 2778(c)(1), *confirmed* the continued vitality of Business and Professions Code section 10032(b) and the Unemployment Insurance Code section 650 test incorporated therein, as the standard for resolving the employee or independent contractor question for real estate salespersons for purposes of the Labor Code, including its wage and hour provisions.

13.

Whitlach, on the other hand, argues that the Unemployment Insurance Code section 650 test, as incorporated in Business and Professions Code section 10032(b), was never the standard for resolving the employee or independent contractor status of real estate salespersons for purposes of the Labor Code, including its wage and hour provisions. More specifically, Whitlach argues that, for purposes of the Labor Code, *prior to passage of AB 5*, this question was controlled by the *Borello* test, and the same is true *after the passage of AB 5* and enactment of Labor Code section 2778(c)(1).

As discussed in detail below, we conclude that defendants Premier Valley and Century 21 have the better argument, in that the Unemployment Insurance Code section 650 test, as incorporated in Business and Professions Code section 10032(b), has long provided, and continues to provide, the controlling test for resolving the employee or independent contractor question for real estate salespersons, for purposes of the wage and hour provisions of the Labor Code.

> **D.** **Test for Determining Employee or Independent Contractor Status Set Forth in Unemployment Insurance Code Sections 650 and 13004.1 (Same Test Appears in Both Sections), as Incorporated in Business and Professions Code Section 10032(b)**

As noted, Business and Professions Code section 10032(b) incorporates the test for determining the employee or independent contractor status set forth in Unemployment Insurance Code sections 650 and 13004.1, respectively. Unemployment Insurance Code section 650 provides: [¶] " 'Employment' does not include services performed as a real estate … broker or as a real estate … salesperson, by an individual if all of the following conditions are met: [¶] (a) The individual is licensed under the provisions of … Part 1 (commencing with Section 10000) of Division 4 of, the Business and Professions Code.… [¶] (b) Substantially all of the remuneration (whether or not paid in cash) for the services performed by that individual is directly related to sales or other output (including the performance of services) rather than to the number of hours worked by that individual

14.

[i.e., the remuneration is in the form of a commission]. [¶] (c) The services performed by the individual are performed pursuant to a written contract between that individual and the person for whom the services are performed and the contract provides that the individual will not be treated as an employee with respect to those services for state tax purposes." Section 13004.1 of the Unemployment Insurance Code perfectly mirrors section 650 of that code.

Defendants Premier Valley and Century 21 contend that Business and Professions Code section 10032(b) and the Unemployment Insurance Code sections 650/13004.1 test incorporated therein, provide the applicable standard for determining employee or independent contractor status for real estate salespersons for purposes of the Labor Code, including its wage and hour provisions. Defendants further contend that all the conditions of the three-factor test set forth in Unemployment Insurance Code sections 650 and 13004.1 "are indisputably satisfied here," a contention that Whitlach does not challenge (Whitlach rather argues the aforementioned statutes do not provide the applicable test for resolving the employee or independent contractor question for purposes of the Labor Code). As Premier Valley and Century 21 point out, the SAC and its exhibits, along with documents judicially noticed by the trial court, establish that Whitlach was a licensed real estate agent; he was paid by commission; and he entered into a written contract regarding his services as a real estate agent that specified he was an independent contractor for state tax purposes. In short, the three-factor test set forth in Unemployment Insurance Code sections 650 and 13004.1 is satisfied here. Premier Valley and Century 21 posit, "[t]hat is the end of the matter" as "[u]nder the statutes' plain text, Whitlach was clearly and unambiguously an independent contractor."

We will now analyze the primary question presented in this appeal, that is, what is the proper test for resolving the employee or independent contractor question for real estate salespersons for purposes of the wage and hour provisions of the Labor Code.

15.

*E.*      *Analysis*

The unique relationship between real estate brokers and agents is both commonly recognized and has long been reflected in California law.  A web of statutes and regulations require brokers to exercise significant control over agents and to direct work performed by agents under their supervision.  (See, e.g., Cal. Code Regs., tit. 10, § 2725; 2 Miller & Starr, Cal. Real Estate (4th ed. 2021) § 4:31.)  Such a legal regime would normally complicate determining real estate agents' employment status because a principal's right to control his agent is usually the most important factor suggesting the agent is an employee rather than an independent contractor.  (See *Borello*, *supra*, 48 Cal.3d at p. 350 [right to control most important consideration].)  Yet the Legislature has signaled, at the same time, that real estate agents were free to structure independent contractor arrangements, and that, in many contexts, traditional or common law-based tests did not make sense for resolving the employee or independent contractor question for real estate agents.

Thus, the Legislature enacted Unemployment Insurance Code section 650 in 1953, and subsequently Unemployment Insurance Code section 13004.1 (these are nearly identical to a provision in the federal tax code, 26 U.S.C. § 3508), both of which statutes excluded real estate agents from the definitions of "employee" and "employment" for purposes of that code when the individual agent was licensed by the state, was paid by commission rather than in relation to the number of hours of worked, and performed the relevant services pursuant to a written contract, with the latter specifying that the individual would not be treated as an employee with respect to those services, for state tax purposes.

There were no statutory tests to resolve the employee or independent contractor question for real estate agents in other contexts.  California courts were thus left to evaluate whether real estate agents were employees or independent contractors by

16.

recourse to the general control-based test and/or the provisions of the Real Estate Law (Bus. & Prof. Code, § 10000 et seq.), and to tackle the question under what circumstances, *if at all*, real estate agents could enter into independent contractor relationships with brokers. Some of the resulting disputes centered on the proper test for ascertaining the liability of brokers for the tortious acts of real estate salespersons (*Gipson v. Davis Realty Co*. (1963) 215 Cal.App.2d 190 (*Gipson*)), others involved disputes as to whether a real estate salesperson was entitled to minimum wages (*Grubb & Ellis Co. v. Spengler* (1983) 143 Cal.App.3d 890 (*Grubb & Ellis*)), and whether a salesperson was an employee under workers' compensation law (*Payne v. White House Properties* (1980) 112 Cal.App.3d 465 (*Payne*)).

Still another dispute involved an instance in which the "State Labor Commissioner" had "interpreted the relationship [between brokers and real estate agents] as that of an employer/employee for purposes of applying provisions of the Labor Code," specifically in mediating "commission disputes between [brokers and agents]," despite the fact that the brokers and agents had entered into contracts establishing the agents as independent contractors. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of SB 630, dated April 29, 1991.) (See *Resnik v. Anderson & Miles* (1980) 109 Cal.App.3d 569 (*Resnik*) [holding Labor Commissioner properly intervened on behalf of real estate salesperson in matter of unpaid sales commissions, because a real estate salesperson is an employee as a matter of law under *Gipson* and the Real Estate Law].)

The *Gipson* case, and its progeny, including *Resnik*, had significant implications for the real estate industry. As noted, *Gipson* concerned the question of a broker's liability for the tortious acts of a salesperson. After reviewing various provisions of the Real Estate Law that governed the relationship between brokers and salespersons, the *Gipson* court concluded, "a salesman, insofar as his relationship with the broker who employs him is concerned, cannot be classed as an independent contractor" because "the

17.

Legislature has, by virtue of statutory enactment, made such a salesman an agent [or employee] of the broker as a matter of law." (*Gipson*, *supra*, 215 Cal.App.2d at pp. 206-207.) *Gipson* further held that any contract purporting to make the salesperson an independent contractor is "invalid as being contrary to the provisions of the Real Estate Law." (*Id*. at p. 207.) *Resnik* extended *Gipson*'s holding to the arena of Labor Code requirements, and reemphasized, with reference to the provisions of the Real Estate Law, that "the Legislature has made" real estate salespersons "employee[s]" of brokers "as a matter of law." (*Resnik*, *supra*, 109 Cal.App.3d at p. 572.)

On the other hand, in *Payne*, in considering whether a real estate salesperson was an employee under workers' compensation law, the court concluded, based on the Real Estate Law that, "[i]n most instances the real estate salesperson would be an employee for purposes of worker's compensation, but that determination remains a question of fact." (*Payne*, *supra*, 112 Cal.App.3d at p. 471.) Finally, *Grubb & Ellis*, considered whether a real estate salesperson was entitled to minimum wages. *Grubb & Ellis* described the different ways courts had determined the employee or independent contractor status of real estate agents in various contexts. *Grubb & Ellis* concluded that, in that case, the question of the proper test for determining the status of real estate agents for purposes of application of state minimum wage laws was essentially moot because, although the plaintiff claimed he was an employee under the traditional common law " 'control' " test, he had offered "minimal evidence" in support of his claim. (*Grubb & Ellis*, *supra*, 143 Cal.App.3d at p. 898.)

In 1991, the Legislature addressed the disputes around the employee or independent contractor question for real estate agents, as well as the focus on the Real Estate Law in the caselaw addressing this question, by passing SB 630, which enacted Business and Professions Code section 10032. The legislative history of SB 630, as included in the record on appeal, indicates that the bill's sponsor, the California

18.

Association of Realtors, sought legislative action to require recognition, in certain legal contexts (including the labor law arena), of the contractual arrangements between brokers and their sales agents and to effectuate such contractual arrangements when applying specific provisions of law. Thus, as reflected in, among other documents, an April 1991 report of the Senate Committee on Business and Professions issued shortly after the introduction of SB 630 in that committee, the purpose of the proposed statute (i.e., Business and Professions Code section 10032) was "to recognize legitimate contractual relationships of real estate licensees when applying specific provisions of law (i.e., Labor Code, Revenue and Taxation Code and the Insurance Code) to the broker-salesperson relationship," while leaving in place "existing obligations of a real estate broker regarding liability [and] workers compensation insurance."

Ultimately, Business and Professions Code section 10032, subdivision (a) preserved the status quo for obligations of *brokers and agents* regarding liability to the public (e.g., under tort law and the Real Estate Law (Business & Professions Code, § 10000 et seq.)). Subdivision (b) of the statute supplied the rule with respect to "their legal relationship with and obligations to each other," as well as the test or governing standard for determining the employee or independent contractor status of real estate agents for certain "statutory purposes," with the express exception of the workers' compensation scheme (set forth in specific provisions of the Labor Code). The test incorporated in Business and Professions Code section 10032(b) for determining, for certain "statutory purposes," the employee or independent contractor status of real estate agents, is the test set forth in Unemployment Insurance Code sections 650/13004.1. The present case requires us to address the scope of subdivision (b) of Business and Professions Code section 10032, specifically, whether the test (for determining the employee or independent contractor status of real estate agents for certain "statutory

19.

purposes") incorporated therein, applies to the wage and hour provisions of the Labor Code.**4**

By its terms, subdivision (b) of Business and Professions Code section 10032 incorporates the test supplied by the Unemployment Insurance Code, i.e., Unemployment Insurance Code sections 650 and 13004.1, for resolving the employee or independent contractor question for "statutory purposes," excluding workers' compensation purposes. And as noted above, the provisions of the Unemployment Insurance Code incorporated in Business and Professions Code section 10032(b), dictate that a real estate agent is an independent contractor if three basic conditions are satisfied:  (1) the agent is licensed; (2) the agent is paid through commissions; and (3) the agent has signed an independent contractor agreement.

Premier Valley and Century 21 point out:  "For more than a quarter century, everyone has understood that [Business and Professions Code section 10032(b)] dictates that real-estate agents are independent contractors for purposes of California labor law where [the specified] three conditions are met.  This understanding is so well-settled, in fact, that the California Association of Realtors (which sponsored [the bill that enacted Business and Professions Code section] 10032[(b)]) developed a standard independent-contractor agreement in line with this test.  [Citation.]  Thousands of brokers and real-estate agents, in other words, have structured their affairs based on this understanding."

Premier Valley and Century 21 further note:  "While this action was pending, the Legislature enacted AB-5.  For many industries—particularly those comprising the 'gig

---

**4**    We recognize that the question whether the test set forth in Unemployment Insurance Code sections 650/13004.1, as incorporated in Business and Professions Code section 10032(b), applies to PAGA is also implicated.  However, we need only address whether this test, as incorporated in Business and Professions Code section 10032(b), provides the appropriate test for determining the employee or independent contractor status of real estate agents for purposes of the wage and hour provisions of the Labor Code.

economy'—AB-5 effected sweeping changes.  It did so by codifying the 'ABC' employment test set out in *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903.  But the Legislature made expressly clear in AB-5 that it did not intend to alter the rules for the real-estate industry.  As even Whitlach recognizes, in enacting AB-5 'the Legislature wanted to retain [Business and Professions Code section 10032(b)'s] original meaning.'  [Citation.]  Thus, in a section setting out exceptions from the [application of] the ABC test, the Legislature expressly incorporated into the Labor Code the rule established by [Business and Professions Code section 10032(b)].  [¶] Specifically, Labor Code [section] 2778(b)(1) [added by AB-5] provides that the employment-status test for real-estate agents 'shall be governed by subdivision (b) of Section 10032 of the Business and Professions Code,' and further provide[s] alternative rules [in] various other provisions that [apply] if [Business and Professions Code section] 10032(b) [is] 'not applicable.' "

We agree with defendants Premier Valley and Century 21 that, upon its enactment in 1991, Business and Professions Code section 10032, and Unemployment Insurance Code sections 650/13004.1 as incorporated therein, provided the appropriate test for resolving the employee or independent contractor question for real estate salespersons for purposes of the wage and hour provisions of the Labor Code that are at issue here.  We further agree with defendants Premier Valley and Century 21 that after enactment of Labor Code section 2778 (including Labor Code section 2778(c)(1)) by AB 5 in 2020,[5] Business and Professions Code section 10032(b) and Unemployment Insurance Code sections 650/13004.1 as incorporated therein, continue to provide the appropriate test for resolving this question for this purpose.

We will first discuss the former proposition or initial issue presented, that is, whether upon its enactment, Business and Professions Code section 10032(b) (and

---

[5]     Labor Code section 2778 was previously numbered as Labor Code section 2750.3.

21.

Unemployment Insurance Code sections 650/13004.1, as incorporated therein), provided the appropriate test for resolving the employee or independent contractor question for real estate salespersons for purposes of the wage and hour provisions of the Labor Code. Thereafter we will address the ultimate question, that is, whether Business and Professions Code section 10032(b) (and Unemployment Insurance Code sections 650/13004.1, as incorporated therein), continue to provide the appropriate test for resolving this question for this purpose.

      **(i)**      **The Unemployment Insurance Code Sections 650/13004.1 Test, as Incorporated in Business and Professions Code Section 10032(b), Has Applied to the Wage and Hour Provisions of the Labor Code Since Enactment of Business and Professions Code Section 10032(b)**

Defendants Premier Valley and Century 21 submitted to the trial court, the legislative history file for SB 630, in connection with their demurrers to the FAC and SAC, and the trial court took judicial notice thereof. We have reviewed the legislative history documents that are part of the record on appeal. Senate Bill 630 was introduced on March 4, 1991, and, amended four times over the following months (on April 15 and 29, July 18 (amended in Assembly), and September 4, 1991 (amended in Assembly)), before it passed on September 12, 1991. Rather than exhaustively detailing the legislative history of SB 630, we will highlight a few relevant aspects.

Senate Bill 630 was directed to the Real Estate Law in the Business and Professions Code. It is instructive to look at an early draft version of SB 630, bearing in mind that, at the time, "*for purposes of the administration of the real estate law*, the salesperson [was treated as] the employee and agent of the broker," and this concept was reflected in various provisions of the Real Estate Law. (*Grubb & Ellis*, *supra*, 143 Cal.App.3d at p. 895; former Bus. & Prof. Code, § 10132; 2 Miller & Starr, Cal. Real Estate (4th ed. 2021), § 3:72.) As noted above, at the time, courts were focused on the relationship between real estate agents and brokers as specified in the Real Estate Law,

when determining the employee or independent contractor status of real estate salespersons in disparate contexts, including for purposes of tort law and labor law. Early versions of SB 630 reflect a legislative intent to stem, for certain purposes, the direction in which the caselaw was evolving, by, among other measures, revamping the definition of the terms "employee" and "employ," in the Real Estate Law (subsequent versions of the bill took a different approach to reach the same result). The legislative history of SB 630 also indicates the Legislature wanted to effectuate the contractual relationship between brokers and agents for purposes of the Labor Code.

An early version of SB 630 from May 1991, provided, in pertinent part:

"SECTION 1. Section 10032 is added to the Business and Professions Code, to read:

"10032. As used in this part [of the Real Estate Law], the term 'employee' shall include independent contractors and the term 'employ' shall refer to contractual relationships of both an employee and an independent contractor. All obligations created under this part, all regulations issued by the commissioner relating to employees, and all other obligations of employees to members of the public, shall also apply to independent contractors.

"Sec. 2. This act is intended only to recognize legitimate contractual relationships of licensees when applying the provisions of *the Labor Code, Revenue and Taxation Code, and the Insurance Code* to the broker-salesperson relationship and not to increase or decrease any existing obligations of a real estate broker regarding liability or workers compensation insurance, nor shall it be interpreted or applied to affect the holding in *Gipson*[, *supra*,] *215 Cal.App.2d 190*, that real estate salespersons cannot be classified as independent contractors [for purposes of tort liability] and that any contract which purports to change that relationship to that of an independent contractor is invalid." (First italics added.)

A bill analysis dated May 1, 1991, conducted by the Department of Finance, analyzed the version of SB 630 excerpted above. We mention this bill analysis because it

23.

summarizes and highlights points that are reflected in multiple documents throughout the legislative history file. The bill analysis states:

> "Current law [i.e., the Real Estate Law] provides for the Department of Real Estate (DRE) to license and regulate persons involved in the sale, lease, or exchange of real property. The current law defines particular terms with respect to these provisions.

> "This bill would add a provision specifying that [as used in the Real Estate Law] an 'employee' includes independent contractors and that the term 'employ' refers to contractual relationships of both employees and independent contractors. The bill also states legislative intent that *existing contractual relationships of licensees be recognized when applying the provisions of the Labor Code, Revenue and Taxation Code, and the Insurance Code to the broker-salesperson relationship*. The bill is not intended to affect existing obligations of real estate brokers regarding liability, workers compensation, or the provisions of a court case[, i.e., *Gipson*, *supra*, 215 Cal.App.2d 190,] which does not consider real estate salespersons to be independent contractors for tort liability purposes."

> "The sponsors of this measure [i.e., the California Association of Realtors or CAR] wish to clarify in law the contractual relationship that may exist between real estate brokers and agents; it is common practice for real estate agents to function as independent contractors of brokers. *Despite the existence of contracts, disputes have arisen with the State Labor Commissioner over employer/employee relationships during the mediation of disagreements*.

> "[Department of Real Estate] is concerned that this bill would *not* achieve its goal of clarifying the law. In its analysis of the bill, the department states, 'It would do nothing but confuse existing law on the relationship of brokers and salespersons under all existing laws, even the Real Estate Law.' " (Italics added.)

On a different note, the legislative history file contains multiple references to the Department of Industrial Relations' (DIR) opposition to the early versions of SB 630, including the May 1991 draft version quoted above. The DIR opposed the bill on grounds that, by redefining "employee" to include independent contractors, the bill was susceptible to an interpretation, or, rather, misinterpretation, that would potentially

expand the jurisdiction of the Department of Labor Standards Enforcement (DLSE)[6] to include broker-salesperson disputes, thereby increasing the DLSE's workload and interfering with the real estate industry's system of private arbitration. In this vein, a bill analysis by the DIR from May 1991 states:

"[Senate Bill No. 630] would add Section 10032 to the Business and Professions Code, relating to real estate salesmen and real estate brokers, and would establish an employee/employer relationship between these two occupations. [¶]

"Existing law regulates real estate salesmen and real estate brokers involved in the sale, lease, or exchange of real property. [¶] … [¶]

"This bill would provide that the term 'employee' shall include heretofore independent contractors engaged in the activities of real estate salesmen and real estate brokers, and the term 'employ' shall refer to the contractual relationship between these two occupations. The bill would provide that all obligations created under these provisions shall apply to the heretofore independent contractor relationship between these two occupations. [¶] … [¶]

"The Department is concerned that the provisions of this bill would expand the jurisdiction of the Division of Labor Standards Enforcement to include the contractual relationship between real estate salesmen and real estate brokers, and would unnecessarily interfere with the system of private arbitration [that is set up] between these two occupations to settle any disputes that may arise between them.

"The Department believes that the bill is unnecessary [for purposes of labor violations] in that sufficient contractual remedies exist through a binding arbitration agreement between these two entities such that involvement of the Division in these disputes is both unwarranted and unnecessary."

On July 18, 1991, SB 630 was amended in the Assembly by adding three subsections (i.e., subsections (a), (b), and (c)) to proposed Business and Professions Code section 10032. Subsection (c), as it appeared in the July 18, 1991 version of SB 630,

---

**6** The DLSE is the administrative agency authorized to enforce California's labor laws, including IWC wage orders. (See, e.g., *Dynamex*, *supra*, 4 Cal.5th at p. 946; *Kilby v. CVS Pharmacy, Inc*. (2016) 63 Cal.4th 1, 13.)

25.

provided: "A real estate broker and a real estate salesperson licensed under that broker may contract between themselves as independent contractors or as employer and employee, for purposes of their legal relationship with and obligations to each other. Characterization of a relationship as either 'employer and employee' or 'independent contractor' *for statutory purposes*, *including, but not limited to*, withholding taxes on wages and for purposes of unemployment compensation, shall be governed by Section 650 and Sections 13000 to 13054, inclusive, of the Unemployment Insurance Code. For purposes of workers compensation the characterization of the relationship shall be governed by Section 3200, and following, of the Labor Code." (Italics added.)

On September 4, 1991, SB 630 was further amended in the Assembly, deleting the proposed new definitions for the terms, "employee" and "employ," for purposes of the Real Estate Law. An analysis of the amendments prepared by the Senate Rules Committee on September 10, 1991, indicates the definitions of the terms "employee" and "employ" were deleted so as to "[a]llow a real estate broker and a real estate salesperson licensed under that broker to contract between themselves as independent contractors or as employer and employee." The analysis includes a "Comment" as follows: "The sponsors of this measure wish to clarify in law the contractual relationship that may exist between real estate brokers and agents; it is common practice for real estate agents to function as independent contractors of brokers. Despite the existence of contracts, disputes have arisen with the State Labor Commissioner over employer/employee relationships during the mediation of disagreements."

After the September 4, 1991 amendments, the bill took its final form, as follows (in pertinent part):

"Section 10032 is added to the Business and Professions Code, to read:

"10032. (a) All obligations created under Section 10000, and following, all regulations issued by the commissioner relating to real estate salespersons, and all other obligations of brokers and real estate

26.

salespersons *to members of the public* shall apply regardless of whether the real estate salesperson and the broker to whom he or she is licensed have characterized their relationship as one of 'independent contractor' or of 'employer and employee.'

"(b) A real estate broker and a real estate salesperson licensed under that broker *may contract between themselves as independent contractors or as employer and employee, for purposes of their legal relationship with and obligations to each other*. Characterization of a relationship as either 'employer and employee' or 'independent contractor' *for statutory purposes*, including, but not limited to, withholding taxes on wages and for purposes of unemployment compensation, shall be governed by Section 650 and Sections 13000 to 13054, inclusive, of the Unemployment Insurance Code. For purposes of workers compensation the characterization of the relationship shall be governed by Section 3200, and following, of the Labor Code.

"SEC. 2. This act shall not be interpreted or applied to affect the obligation or ability, if any, of a broker to maintain workers compensation insurance, or the holding in [*Gipson*, *supra*,] 215 Cal.App.2d 190, that a real estate broker may be vicariously liable under the doctrine of respondeat superior for tortious acts of a salesperson licensed under the broker; and further, that real estate salespersons cannot be classified as independent contractors for purposes of liability to third parties and that any provision in a contract which purports to change that relationship from that of an agent to independent contractor is invalid as being contrary to law for purposes of tort liability to third parties." (Italics added.) (See Stats. 1991, ch. 679.)

The legislative history of SB 630, which enacted Business and Professions Code section 10032, indicates that in enacting this statute, the Legislature intended that, for *certain* "statutory purposes," which included parts of the Labor Code, the employee or independent contractor question for real estate salespersons would be resolved by application of the three-factor test set forth in Unemployment Insurance Code sections 650/13004.1. Thus, as noted above, early versions of the bill expressly stated: "This act is intended only to recognize legitimate contractual relationships of licensees when applying the provisions of the Labor Code, Revenue and Taxation Code, and the Insurance Code to the broker-salesperson relationship and not to increase or decrease any existing obligations of a real estate broker regarding liability or workers compensation

27.

insurance." Later versions of the bill supplanted the specific reference to the "Labor Code, Revenue and Taxation Code, and the Insurance Code," with the broader term "statutory purposes."

Many additional legislative history documents concerning SB 630 indicate that the Legislature intended and anticipated that Business and Professions Code section 10032(b) would apply to various provisions of the Labor Code. For example, another analysis, this one by the Assembly Committee on Consumer Protection, Governmental Efficiency and Economic Development, dated June 19, 1991, states that the bill "is intended only to recognize legitimate contractual relationships of licensees (independent contractor status) when applying provisions of the Labor Code, Revenue and Taxation Code, and the Insurance Code to the broker-salesperson relationship," and "is not intended to increase or decrease any existing obligations of a real estate broker regarding liability or workers compensation insurance."

The June 19, 1991 committee analysis further notes: "A real estate salesperson who is 'employed' by a broker is somewhat of a hybrid because while the salesperson has no official hours and in many respects is not subject to control by the broker in how sales are accomplished, the law does require the broker to perform certain supervisorial tasks with respect to the salesperson which take the relationship out of the true independent contractor realm." The analysis adds: "The [bill] sponsor [i.e., the California Association of Realtors or CAR] notes that the bill, in establishing an independent contractor relationship between a broker and a salesperson for purposes of … laws such as tax law … *or labor law*, is not intended to interfere with any other responsibilities that currently exist in tort law. Thus, the bill contains specific language to clarify this and the fact that the bill does not overturn the holding of the court in the *Gipson* case regarding tort liability." (Italics added.)

The analysis also provides: "The Department of Real Estate is neutral on this bill. The department was originally concerned that the bill might weaken a broker's obligation to supervise a salesperson or a broker's liability to third parties. The amendment which clarified that the provision is not to be interpreted to apply to affect the *Gipson* case alleviated these concerns." The analysis notes that the bill's sponsor, that is, CAR, was motivated by "problems with the State Labor Commissioner," but indicates the bill sought to accomplish its goals "indirectly by adding a section to the Business and Professions Code," rather than by directly amending the Labor Code and tax codes, because of various complications (such as the need to exclude workers compensation obligations).

The indications in the legislative history of SB 630 that the bill was proposed in response to the position taken by the State Labor Commissioner, in some instances, that real estate agents were employees for purposes of disputes over commissions, among other things, suggest that provisions of the Business and Professions Code section 10032(b), including the test set forth in Unemployment Insurance Code sections 650/13004.1 incorporated therein, were intended to apply to the Labor Code, or at least to its wage and hour provisions.

Importantly, if ironically, the Department of Industrial Relations opposed the early versions of SB 630 on grounds the language therein could potentially result in expanding the jurisdiction of the DLSE to cover disputes between brokers and real estate salespersons. It is noteworthy that the department evidently dropped its opposition once the bill was amended to accommodate the department's concerns by, for instance, adopting the test forth in Unemployment Insurance Code sections 650/13004.1 for determining the status of real estate agents for "statutory purposes," including the wage and hour provisions of the Labor Code.

An "enrolled bill report" prepared by DIR on September 19, 1991, recommends that the Governor sign the bill. The report states: "The sponsors have indicated that they wish to have the benefits of the independent contractor relationship as between real estate salespersons and real estate brokers in resolving disputes over commissions, except for purposes of workers' compensation … where an employer/employee relationship would apply [pursuant to *Borello*, *supra*, 48 Cal.3d 341]. Although the language contained in this bill which allows the parties to characterize their relationship as being that of independent contractor or employer/employee is confusing and could lead to enforcement problems in the context of other employment relationships, the bill as enrolled, does not present any enforcement issues to be considered by the Department of Industrial Relations."

The implications of the legislative history of SB 630 are reinforced by the text of Business and Professions Code section 10032(b). While Business and Professions Code section 10032(b) adopts the Unemployment Insurance Code sections 650/13004.1 test for determining the employee or independent contractor status of real estate agents for "statutory purposes," it carves out workers compensation as an area where the employee or independent contractor status of real estate agents is to be determined pursuant to the *Borello* test. Specifically, Business and Professions Code section 10032(b) states: "For purposes of workers compensation the characterization of the relationship shall be governed by Section 3200, and following, of the Labor Code." Pursuant to Labor Code section 3351, for purposes of workers compensation, " '[e]mployee[s]' include most persons 'in the service of an employer under any …contract of hire' [citation], but do not include independent contractors." (See *Borello*, *supra*, 48 Cal.3d at p. 349.) As for independent contractors, under Labor Code section 3353, for purposes of workers compensation, independent contractor means " 'any person who renders service for a specified recompense for a specified result, under the control of his principal as to the

30.

result of his work only and not as to the means by which such result is accomplished.' " (See *Borello*, *supra*, at p. 349.) Our Supreme Court interpreted these workers compensation provisions in *Borello* and held that, for purposes of workers compensation, "[t]he determination of employee or independent contractor status is one of fact," to be decided by application of the control of details test augmented by other relevant factors. (See *Borello*, *supra*, at pp. 349, 350-351.)

In short, Business and Professions Code section 10032(b), creates an express exception for a subpart of the Labor Code, that is, workers compensation, in that it provides that determination of the employee or independent contractor status of real estate agents *for purposes of workers compensation* is to be made pursuant to the *Borello* test. This carve out for workers compensation indicates that the Unemployment Insurance Code sections 650/13004.1 test is applicable to *other* parts of Labor Code, and specifically, as relevant here, the wage and hour provisions of the Labor Code.[7] (See *Harris v. Olszewski* (6th Cir. 2006) 442 F.3d 456, 469 ["The very nature of an exception is to carve out matters otherwise covered by the rule."].) If the Legislature had intended determination of the employee or independent contractor status of real estate agents for purposes of the Labor Code was to be made pursuant to the *Borello* test, a specific carve out to this effect for workers compensation would not have been necessary.

Another factor indicating that the Unemployment Insurance Code sections 650/13004.1 test, as incorporated in Business and Professions Code section 10032(b), was intended to apply more broadly than simply in determining the employee or independent contractor status of real estate agents for purposes of tax withholding and

---

[7] The uncodified "Section 2" of SB 630 (see above) emphasizes, "[t]his act shall not be interpreted or applied to affect the obligation or ability, if any, of a broker to maintain workers compensation insurance." Had the Unemployment Insurance sections 650/13004.1 test been inapplicable to the Labor Code altogether, there would be no need for this targeted disclaimer.

31.

unemployment compensation, is that this test was already applicable for the latter purposes.  By incorporating this test into Business and Professions Code section 10032(b), the Legislature appears to have intended this test to apply for a broader array of "statutory purposes."

We need not clarify the full scope of the term, "statutory purposes," in Business and Professions Code section 10032(b), because the question before us is specifically whether this term encompasses the wage and hour provisions of the Labor Code (see footnote 3, *ante*).  In light of the text and legislative history of SB 630, we conclude the test forth in Unemployment Insurance Code sections 650/10034.1, incorporated in Business and Professions Code section 10032(b), as enacted by SB 630, applied to the wage and hour provisions of the Labor Code from the date of enactment of Business and Professions Code section 10032.

**(ii)     Assembly Bill 5 Adopted the Test Encompassed in Business and Professions Code Section 10032(b), for Resolving the Employee or Independent Contractor Question for Real Estate Salespersons for Purposes of the Labor Code's Wage and Hour Provisions**

Both parties take the position, which we accept, that since AB 5 and Labor Code section 2778, subdivision (c) and (c)(1) incorporate Business and Professions Code section 10032(b) without any change or limitation, it follows the Legislature did not intend to make any change to the latter statute but, rather, adopted it with its original meaning and scope intact.  As noted above, AB 5 codified *Dynamex*'s ABC test as the controlling test for determining a worker's employment status for purposes of the Labor Code, the Unemployment Insurance Code, and the wage orders of the Industrial Welfare Commission.  (See Lab. Code, § 2775, subd. (b)(1).)  However, AB 5 also enacted Labor Code section 2778, subdivisions (c) and (c)(1), which collectively *remove* real estate licensees from the purview of Labor Code section 2775, subdivision (b)(1) and application of *Dynamex*'s ABC test.

To reiterate, Labor Code section 2778, subdivision (c) and (c)(1), provide as follows: "(c) Section 2775 and the holding in *Dynamex* do not apply to the following, which are subject to the Business and Professions Code: [¶] (1) A real estate licensee licensed by the State of California pursuant to Division 4 (commencing with Section 10000) of the Business and Professions Code, *for whom the determination of employee or independent contractor status shall be governed by subdivision (b) of Section 10032 of the Business and Professions Code*. If that section is not applicable, then this determination shall be governed as follows: [¶] (A) For purposes of unemployment insurance by Section 650 of the Unemployment Insurance Code. [¶] (B) For purposes of workers' compensation by Section 3200 et seq. [of the Labor Code]. [¶] (C) For all other purposes in the Labor Code by *Borello*. The statutorily imposed duties of a responsible broker under Section 10015.1 of the Business and Professions Code are not factors to be considered under the *Borello* test." (Italics added.)

Here, Whitlach's complaint complies with the requirements of PAGA by alleging violations of the Labor Code, specifically, Labor Code sections 226.8 (misclassification of an employee as an independent contractor); 2802 (failure to reimburse reasonable business expenses); 221-223 and 400-410 (taking of unlawful deductions from wages); 204 and 226 (failure to timely pay wages or provide proper wage statements); 1194, 1197, 1197.1 (failure to pay minimum wages); and 226.7, 512, and 558 (failure to provide required meal periods). Whitlach's complaint also alleges violations of wage orders in a few instances, in conjunction with corresponding Labor Code violations, as in his allegations regarding failure to pay minimum wages and failure to provide required meal periods, but these alleged wage order violations are derivative of Labor Code provisions.[8] More importantly, for our purposes, Whitlach cannot directly enforce,

---

[8]    For example, the Labor Code provides that the minimum wage set by the IWC *is* the minimum wage (Lab. Code, § 1197), and expressly authorized the IWC to determine the applicable minimum wage (Lab. Code, §§ 1173, 1178.5, 1182, 1185). The same is

33.

through PAGA, any alleged wage order violations; he can only do so indirectly, by enforcing provisions of the Labor Code.

As noted, Whitlach's instant PAGA claim alleges violations of the wage and hour provisions of the Labor Code. To the extent Whitlach contends his PAGA claim alleges, in part, violations of IWC wage orders, which he posits are not "statutory," within the meaning of Business and Professions Code section 10032(b), that argument is not well taken. The IWC wage orders are not independently actionable; rather, Whitlach seeks to enforce certain provisions of the wage orders through the vehicle of PAGA, which "authorizes recovery of civil penalties only for violations of the Labor Code." (*Thurman v. Bayshore Transit Management, Inc*. (2012) 203 Cal.App.4th 1112, 1131-1132 [citing PAGA, Lab. Code, § 2699, subd. (a),**9** and noting " 'PAGA allows the recovery of civil penalties only for violations of "this code," meaning the California Labor Code' "], overruled on other grounds by *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175.) "Although PAGA actions can serve to *indirectly* enforce certain wage order provisions by enforcing *statutes* that require compliance with wage orders (e.g., § 1198, which prohibits longer work hours than those fixed by wage order or employment under conditions prohibited by a wage order), the PAGA does not create any private right of action to *directly* enforce a *wage order*." (*Thurman*, *supra*, at p. 1132, fn. omitted; see, e.g.,

---

true for meal-and-rest-break rules (Lab. Code, §§ 226.7, 516, 1198). The wage orders are thus "incorporate[d]" into, statutes. (*Gonzales v. San Gabriel Transit, Inc*. (2019) 40 Cal.App.5th 1131, 1158.)

**9** Section 2699, subdivision (a), which establishes the right of an aggrieved employee to sue on behalf of other employees, states: "Notwithstanding any other provision of law, any provision of *this code* that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3." (Italics added.)

*Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 14 ["[A]n employee may enforce the protections of the wage order in court only by bringing a claim under the Labor Code."].)

"Only the Legislature, through the enactment of a statute, can create a private right of action to directly enforce … a wage order." (*Thurman*, *supra*, 203 Cal.App.4th at p. 1132.) "The IWC has not created, and has no power to create, a private right of action for violation of a wage order, and we are aware of no statute that creates a private right of action for a violation of an IWC wage order when the violation at issue is not also a violation of the Labor Code. Absent statutory authorization, there is no right of action under the PAGA to enforce an IWC wage order." (*Ibid*.)

Pivoting back to Business and Professions Code section 10032(b), we concluded above that this statute adopts the test set forth in Unemployment Insurance Code sections 650/13004.1 for purposes of determining employee or independent contractor status for real estate agents for certain "statutory purposes," including for purposes of the wage and hour provisions of the Labor Code. Assembly Bill No. 5, for its part, adopts Business and Professions Code section 10032(b)—and, in turn, the Unemployment Insurance Code sections 650/13004.1 test incorporated therein—as the primary test for "determination of employee or independent contractor status" for "real estate licensees," where Business and Professions Code section 10032(b), is "applicable."

Here, Whitlach had entered into a written contract with Premier Valley specifying that Whitlach was an independent contractor, as expressly contemplated by Business and Professions Code section 10032(b). Furthermore, as discussed above, the primary test for determining employee or independent status under Business and Professions Code section 10032(b) (i.e., the test set forth in Unemployment Insurance Code sections 650/13004.1) applies to the wage and hour provisions of the Labor Code. Given these circumstances, we conclude that, under Labor Code section 2778(c)(1), the three-factor

35.

test set forth in sections 650/13004.1 of the Unemployment Insurance Code as incorporated in Business and Professions Code section 10032(b), provides the standard for determining Whitlach's employee or independent contractor status for purposes of his wage and hour claims.

The question whether Whitlach is an employee or independent contractor is pivotal for the survival of Whitlach's substantive claims because the wage and hour provisions of the Labor Code apply only to employees. (*Dynamex*, *supra*, 4 Cal.5th 903, 913 [California's labor laws protect only employees, not independent contractors].) Resolving the employee or independent contractor question by applying the three-factor test set forth in sections 650/13004.1 of the Unemployment Insurance Code requires consideration of whether the relevant real estate salesperson, here, Whitlach, (1) was a licensed real estate agent; (2) was paid by commission; and (3) had entered into a written contract regarding his services as a real estate agent that specified he was an independent contractor for state tax purposes. As addressed above, under this test, Whitlach was undisputedly an independent contractor as a matter of law. The trial court therefore properly granted the demurrer to the SAC, without leave to amend. We are not persuaded by Whitlach's arguments to the contrary.[10]

## III.    Labor Code Section 2778(c)(1) is Constitutional

Whitlach argues, in the alternative, that in carving out an exception to the codification of *Dynamex's* ABC test and adopting a unique test for resolving the employee or independent contractor question for *real estate salespersons*, Labor Code section 2778(c)(1) violates equal protection and is unconstitutional under the California Constitution. (See Cal. Const., art. 1, § 7, subd. (a).) We reject this contention.

---

[10]    Whitlach filed, on January 18, 2022, a request for judicial notice as to certain judicial and legislative materials relevant to his arguments on appeal. Defendants Premier Valley and Century 21 did not oppose the request. Accordingly, the request for judicial notice is granted.

36.

" ' "The concept of equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' " (*People v. Chatman* (2018) 4 Cal.5th 277, 287 (*Chatman*).) "At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification." (*Id.* at p. 288.) Where, as here, "the law challenged neither draws a suspect classification nor burdens fundamental rights," courts will "find a denial of equal protection only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose." (*Id.* at pp. 288-289.) "This core feature of equal protection sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny." (*Id.* at p. 289.) "Coupled with a rebuttable presumption that legislation is constitutional, this high bar helps ensure that democratically enacted laws are not invalidated merely based on a court's cursory conclusion that a statute's tradeoffs seem unwise or unfair." (*Ibid.*)

"In order to decide whether a statutory distinction is so devoid of even minimal rationality that it is unconstitutional as a matter of equal protection, we typically ask two questions. We first ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner. [Citation.] If we deem the groups at issue similarly situated in all material respects, we consider whether the challenged classification ultimately bears a rational relationship to a legitimate state purpose. [Citation.] A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable." (*Chatman*, *supra*, 4 Cal.5th at p. 289.)

Whitlach has failed to show that real estate salespersons are similarly situated as other workers who are not subject to Labor Code section 2778(c)(1). (See *Kimco Staffing Services., Inc. v. State of California* (2015) 236 Cal.App.4th 875, 885 [" '[The] initial

37.

inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' "].)  The real estate sales profession historically has a unique structure that does not have a precise analog among other professions.  The unique structure of the real estate sales profession appears to have been a key consideration in the distinct tests adopted in Labor Code section 2778(c)(1), for purposes of resolving the employee or independent contractor question for real estate salespersons.  (See *Am. Soc. of Journalists and Authors, Inc. v. Bonta* (9th Cir. 2021) 15 F.4th 954, 965 [noting, with respect to AB 5:  "It is certainly conceivable that differences between occupations warrant differently contoured rules for determining which employment test better accounts for a worker's status."].)  To the extent the unique structure of the real estate sales profession appears to have informed the substance of Labor Code section 2778(c)(1), we cannot say that real estate salespersons are similarly situated as other workers for purposes of this law.

In short, Whitlach's equal protection claim to the effect that Labor Code section 2778(c)(1) violates equal protection by treating real estate salespersons differently than other workers, fails.

## IV.  The Independent Contractor Agreement (ICA) Between Premier Valley and Whitlach is not Unconscionable and Unenforceable

Whitlach next contends, in the alternative, that his ICA is unconscionable in large part *because it designates him an independent contractor*.  To prevail, he must show both "procedural" and "substantive" unconscionability.  (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal. 4th 83, 114.)  Whitlach alleges that the ICA is procedurally unconscionable because it is a contract of adhesion.  "When, as here, there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.' "  (*Serpa v.*

*California Surety Investigations, Inc*. (2013) 215 Cal.App.4th 695, 704 (*Serpa*); see *The McCaffrey Group, Inc. v. Superior Court* (2014) 224 Cal.App.4th 1330, 1349 (*McCaffrey*).)

Substantive unconscionability " 'pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' " (*McCaffrey*, *supra*, 224 Cal.App.4th at p. 1349.)  Because "[c]ommerce depends on the enforceability, in most instances, of a duly executed written contract," "[a] party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect was unfair or a bad bargain." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911.) Instead, a contract term must be " ' " ' "*overly* harsh [citation], " '*unduly* oppressive' " [citation], " 'so one-sided as to shock the conscience' " [citation], or "unfairly one-sided." ' " (*Id.* at pp. 910-911.)  " 'All of these formulations point to the central idea that unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain," [citation] but with terms that are "unreasonably favorable to the more powerful party." ' " (*Id*. at p. 911.)

### A.     The ICA is Not Unconscionable Merely Because It Designates Whitlach as an Independent Contractor

Whitlach's main argument is that sections 3A and 3F of the ICA are unconscionable because they establish an independent contractor relationship and thereby deprive him of the protection of statutes that apply only to employees.  We are not persuaded.  Whitlach's argument flies in the face of Business and Professions Code section 10032(b), which authorizes brokers and agents to determine their relationship by contract and expressly allows for real estate agents to operate as independent contractors. (See *Connick v. Teachers Ins. and Annuity Ass'n of Am.* (9th Cir. 1986) 784 F.2d 1018, 1021 [contract was "not unconscionable" where it was "expressly permitted by statute"].)

**B. Whitlach's Other Claims of Unconscionability Have No Merit**

Whitlach contends that four provisions of the ICA—sections 4A, 5A, 8F, and 9—result, in combination, in an illegal forfeiture, and are therefore unconscionable. These provisions collectively (1) require any representation agreement to be in the name of the broker, (2) specify that files are the property of the broker, (3) allow other agents to take over clients upon termination of the ICA, and (4) permit mutual termination of the relationship without cause. More specifically, Whitlach claims these provisions effect a forfeiture as in a situation where, for example, a salesperson who quits or is fired before a home goes under contract forfeits his or her investment of time and money in generating the client and loses out on commissions from future transactions. We are not persuaded, as this hypothetical situation is incidental to the way business is conducted in the real estate industry. If the agent does not make a sale, he or she does not get compensated, but if the agent makes a sale and leaves, under section 8F of the ICA, he or she is entitled to the net commission.

Although the ICA does not have a non-compete provision, Whitlach next argues that two provisions (§§ 5 and 9) effectively prohibit competing after termination and are therefore unconscionable. Section 5 provides that the "Broker's method of conducting business" is a "trade secret," and it prevents salespersons from using for personal advantage "any information gained for or from the business, or files of Broker." Section 9 prevents former real estate agents from interfering "with existing contractual obligations." We need not further examine Whitlach's claims as to these post-termination provisions as both are severable in any event; they are not related to the ICA's core purpose, which is to establish an independent contractor relationship between the parties (the agreement is titled, "Independent Contractor Agreement" and the first substantive section is titled "Independent Contractor Relationship"). (See *Marathon Entertainment, Inc. v. Blasi* (2008) 42 Cal.4th 974, 996 [" '[i]f the illegality is collateral

40.

to the main purpose of the contract, and the illegal provision can be extirpated from the contract,' " then the provision may be severed]; accord *Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1230.)

Whitlach further contends that section 17 of the ICA, which provision entitles brokers or agents to attorney's fees upon prevailing in litigation or arbitration, is unconscionable in the context of a PAGA claim. The availability of attorney's fees on one particular type of claim is properly considered collateral to the ICA's core purpose of establishing an independent contractor relationship and is wholly or partially severable. (See *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 183-184 [collecting cases]; *Serpa*, *supra*, 215 Cal.App.4th at p. 710; *Bermudez v. PrimeLending* (C.D. Cal. Aug. 14, 2012, LA CV12-00987 JAK (Ex)) 2012 U.S. Dist.LEXIS 197023.)

Finally, Whitlach contends that section 12F, a confidentiality provision specific to arbitration, is unconscionable. However, Whitlach admits he waived this point by omitting it from his complaint. Furthermore, arbitration clauses are "viewed as severable from the main contract" (*Luxor Cabs, Inc. v. Applied Underwriters Captive Risk Assurance Co*. (2018) 30 Cal.App.5th 970, 979), so the confidentiality provision would be severable from the ICA even if the whole arbitration scheme was alleged to be unconscionable.

## V. Whitlach's Separate Employment Agreement for His Sales Manager Position is Not Relevant for Purposes of His Representative PAGA Cause of Action

Finally, Whitlach argues the trial court "improperly ignored" his management employment agreement, in ruling on the demurrer to the SAC. (Unnecessary capitalization omitted.) We reject this contention.

Whitlach brought his representative PAGA cause of action on behalf of " 'aggrieved employees,' " including himself, who were "real estate salespersons," that is, persons in a "position that involved the sales of homes and/or real estate." (SAC,

¶ 13.)  Among its factual allegations, the SAC stated that Premier Valley committed multiple Labor Code violations with regard to these salespersons.  (SAC, ¶¶ 13-22.)  The SAC further alleged that Whitlach and the other aggrieved employees were "required to identify themselves as salespersons of [Premier Valley]," engaged in "[s]elling real estate," and generated "sales commissions" for Premier Valley.  (SAC, ¶¶ 16, 17.)

Under the management employment agreement, Whitlach accepted employment "in a management position as Sales Manager."  In this regard, the SAC alleged, in a single paragraph, that to the extent some aggrieved employees, including Whitlach, had entered into employment agreements for management positions, they were designated as "employees" therein, and their respective compensation for their management roles was in salary form, and, therefore, they did "not meet the criteria set forth in Unemployment Ins. Code[,] [section] 650."  (SAC, ¶ 38.)

However, since the "aggrieved employees" on whose behalf the PAGA cause of action was brought were "real estate salespersons," the operative agreements and relevant form of compensation were those related to their roles as "real estate salespersons." Thus, since Whitlach's management employment agreement only governed his work "in a management position as Sales Manager," the agreement had no relevance to his PAGA cause of action.

The trial court concluded that the SAC's "cursory reference to a concurrent employment agreement [did] not support a PAGA claim based on the same, nor [did] the pleading allege facts which relate the terms of the employment agreement to the challenged statutory provisions."

We agree with the trial court that the isolated reference to a management employment contract in the SAC does not support a separate PAGA claim.  The sole allegation in the SAC relating to the management employment agreement was that, in light of the agreement, Whitlach and other managers "d[id] not meet the criteria set forth

42.

in Unemployment Ins. Code § 650." (SAC, § 38.)  In other words, the SAC alleged that the existence of the management employment agreement made Whitlach an employee for all purposes, not that his rights were violated in his work as a manager.  Nor did the SAC allege that the management employment agreement was a novation or modification of his independent contractor agreement, as Whitlach now suggests.

Accordingly, the trial court properly sustained the demurrer to the SAC.

## DISPOSITION

The judgment is affirmed.  Defendants Premier Valley and Century 21 are awarded their respective costs on appeal.[11]


SMITH, J.

WE CONCUR:


LEVY, Acting P. J.


SNAUFFER, J.

---

[11]     Recently, on September 7, 2022, when the case was ready for oral argument, Premier Valley and Century 21 filed a motion to dismiss this appeal without prejudice. Premier Valley and Century 21 contended the motion should be granted because a new decision from the United States Supreme Court, *Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906, had changed the law regarding the ability of defendants, in a PAGA representative action, to compel the plaintiff to arbitrate.  More specifically, Premier Valley and Century 21 stated:  "Under the Federal Arbitration Act, 9 U.S.C. § 1, et seq., as construed by the [U.S.] Supreme Court in *Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906, Whitlach's PAGA claim is now arbitrable and California's rule to the contrary is preempted.  Accordingly, Whitlach's appeal should be dismissed without prejudice so Respondents can assert their rights to arbitrate under *Viking River*."  Whitlach filed an opposition to the motion to dismiss the appeal filed by Premier Valley and Century 21 and the latter parties filed a reply.  Our affirmance of the judgment of dismissal has rendered moot the motion to dismiss this appeal brought by Premier Valley and Century 21, and, consequently, we will not express our views on the merits of that motion.

43.

Filed 12/19/22

## <u>CERTIFIED FOR PUBLICATION</u>

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES R. WHITLACH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PREMIER VALLEY, INC. et al.,<br><br>    Defendants and Respondents. | F082322<br><br>(Super. Ct. No. CV-19-005627)<br><br>**ORDER GRANTING REQUEST<br>FOR PUBLICATION** |

        As the nonpublished opinion filed on November 18, 2022, in the above entitled matter meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), the request for publication filed by amicus curiae is hereby granted and it is ordered that the opinion be certified for publication in the Official Reports.


                                                                                                            SMITH, J.

WE CONCUR:


LEVY, Acting P.J.


SNAUFFER, J.